ST. PAUL REINSURANCE CO., Inc. *v.* Cheryl IRONS,
Individually, and d/b/a Riverfront Phase II

00-1478                                        45 S.W.3d 366

Supreme Court of Arkansas
Opinion delivered June 7, 2001

*Matthews, Sanders & Sayes*, by: *Marci Talbot Liles* and *Roy Gene Sanders*, for appellant.

*Bill R. Holloway*, for appellee.

DONALD L. CORBIN, Justice. This case is before us on a petition for review from the Arkansas Court of Appeals. At issue, is whether an insurer is required to pay the full face value of an insurance policy, as provided under Arkansas's valued-policy statute, codified at Ark. Code. Ann. § 23-88-101 (Repl. 1999), where the insured obtained two separate insurance policies for one insurable interest. We agree with the court of appeals that this is an issue of first impression; as such, initial jurisdiction was proper in this court pursuant to Ark. Sup. Ct. R. 1-2(b)(1). We affirm.

Appellee Cheryl Irons owned a business that was a combination bar and grill and arcade in Arkansas City. She obtained insurance on her business from Appellant St. Paul Reinsurance Co., Inc., on June 26, 1995. The policy, which was to be in effect until June 26, 1996, provided $105,000 in insurance coverage for the building and $25,000 for its contents. On or about July 12, 1995, Appellee renewed her previous insurance coverage with General Star Indemnity Company ("General Star") in the amount of $80,000 on the

building. A fire completely destroyed Appellee's business on October 25, 1995. After detecting the presence of diesel fuel in the building, investigators determined that the fire was the result of arson. No arrests were ever made in connection with the fire.

Following the fire, Appellee attempted to collect on both insurance policies.[1] Appellant and General Star each agreed to pay a pro-rata share of the larger of the two policies, relying on identical provisions in each policy that governed in cases of other insurance. The clauses provided as follows:

1.  You may have other insurance subject to the same plan, terms, conditions and provisions as the insurance under this Coverage Part. If you do, we will pay our share of the covered loss or damage. Our share is the proportion that the applicable Limit of Insurance under this Coverage Part bears to the Limits of Insurance of all insurance covering on the same basis.

2.  If there is other insurance covering the same loss or damage, other than that described in 1. above, we will pay only for the amount of covered loss or damage in excess of the amount due from that other insurance, whether you can collect it or not. But we will not pay more than the applicable Limit of Insurance.

Appellant paid Appellee a total of $59,594.59, while General Star paid her $45,405.41, for a total payout of $105,000. After the insurance companies failed to pay the full policy values, Appellee filed suit against General Star in 1997, alleging that General Star owed her the remaining balance of the face value of its policy under the valued-policy statute. The trial court agreed and granted Appellee's motion for summary judgment. General Star paid the remaining amount owed to Appellee, without appealing the trial court's order.

Appellee then filed suit against Appellant on February 23, 1999, again alleging that the existence of other insurance did not prevent Appellant from being obligated for the full value of the insurance policy under Arkansas's valued-policy statute. On December 20, 1999, the trial court granted Appellee's motion for summary judgment, thus ordering Appellant to pay $45,405.41, the

---

[1] Appellee only attempted to collect on the proceeds for the building itself. She never filed a claim to recover the $25,000 in proceeds for the building's contents.

face amount of the policy, plus prejudgment interest at six percent per annum, in the amount of $10,897.30, and court costs of $125.00. In addition, the trial court ordered Appellant to pay a statutory twelve-percent penalty in the amount of $5,448.65 and attorney's fees in the amount of $15,135.14. Appellant appealed this decision to the court of appeals, who affirmed the order of the trial court on December 13, 2000. This court granted Appellant's petition for review on January 25, 2001.

■■■■ This court recently set forth the standard of review appropriate in summary-judgment cases in *Worth v. City of Rogers,* 341 Ark. 12, 14 S.W.3d 471 (2000):

> We have repeatedly held that summary judgment is to be granted by a trial court only when it is clear that there are no genuine issues of material fact to be litigated, and the party is entitled to judgment as a matter of law. *George v. Jefferson Hosp. Ass'n, Inc.*, 337 Ark. 206, 987 S.W.2d 710 (1999); *Pugh v. Griggs,* 327 Ark. 577, 940 S.W.2d 445 (1997). Once the moving party has established a prima facie entitlement to summary judgment, the opposing party must meet proof with proof and demonstrate the existence of a material issue of fact. *Id.* On appellate review, we determine if summary judgment was appropriate based on whether the evidentiary items presented by the moving party in support of its motion leave a material fact unanswered. *Id.* This court views the evidence in a light most favorable to the party against whom the motion was filed, resolving all doubts and inferences against the moving party. *Adams v. Arthur,* 333 Ark. 53, 969 S.W.2d 598 (1998); *Pugh,* 327 Ark. 577, 940 S.W.2d 445. Our review is not limited to the pleadings, as we also focus on the affidavits and other documents filed by the parties. *Wallace v. Boyles,* 331 Ark. 58, 961 S.W.2d 712 (1998); *Angle v. Alexander,* 328 Ark. 714, 945 S.W.2d 933 (1997). After reviewing undisputed facts, summary judgment should be denied if, under the evidence, reasonable men might reach different conclusions from those undisputed facts. *George,* 337 Ark. 206, 987 S.W.2d 710.

*Id.* at 20, 14 S.W.3d at 475.

Section 23-88-101(a) provides:

> In case of a total loss by fire or natural disaster of the [real] property insured, a property insurance policy other than for flood and earthquake insurance shall be held and considered to be a liquidated demand against the company taking the risk for the full

amount stated in the policy or the full amount upon which the company charges, collects, or receives a premium.

Appellant's sole argument on appeal is that despite the language of the valued-policy statute, it would be against public policy to allow an insured to receive a double recovery by insuring property with multiple policies. Appellee counters that there is no authority in Arkansas to support the view that the valued-policy statute is suspended in cases of concurrent insurance policies covering the same insurable interest. We agree with Appellee.

■ There is no dispute that the underlying purpose of section 23-88-101 is to protect an insured faced with the total destruction of his or her property. In *Tedford v. Security State Fire Ins. Co.*, 224 Ark. 1047, 278 S.W.2d 89 (1955), this court stated:

> Statutes of this sort are passed for the purpose of avoiding the uncertainty of determining the value after the fire. The manifest policy of the statute is to guard against over-insurance of the property. The agents of the company have the opportunity to inspect the property fully before taking the insurance and fixing the amount of the premiums. It is the valuation fixed in advance by the parties by way of liquidated damages in case of a total loss by fire of the property insured without the fault of the insurer.

*Id.* at 1049, 278 S.W.2d at 91 (quoting *Farmers' Home Mut. Fire Ass'n v. McAlister*, 171 Ark. 574, 285 S.W.5 (1926)).

■ This court has held that the "valued policy statute 'becomes a part of every policy of insurance on real property in this State, the same as if it were actually written in the policy.' " *Id.* at 1049, 278 S.W.2d at 90-91 (quoting *E.O. Barnett Bros. v. Western Assur. Co.*, 143 Ark. 358, 220 S.W. 465 (1920)); *Sphere Drake Ins. Co. v. Bank of Wilson*, 312 Ark. 540, 851 S.W.2d 430 (1993). Our case law is clear that the provisions of our valued-policy statute may not be avoided by contrary policy stipulations. *Tedford*, 224 Ark. 1047, 278 S.W.2d 89; *Thurston Nat'l Ins. Co. v. Dowling*, 259 Ark. 597, 535 S.W.2d 63 (1976). In cases where a total loss is involved, a clause that diminishes recovery to less than the full amount stated in the policy is void. *Id.* More specifically, this court has held that a policy provision limiting an insurance company's liability to a pro-rata share of the insurance in force was void where the dwelling was totally destroyed by fire. *See Interstate Fire Ins. Co. v. James*, 252 Ark. 638, 480 S.W.2d 341 (1972). Furthermore, an "insurer may not go behind the policy and show that the insured's interest is worth less

than the amount of the policy." *Tedford*, 224 Ark. at 1050, 278 S.W.2d at 91 (citing 29 AM. JUR. *Insurance* § 1196). Thus, under the valued-policy statute, even an insured who has a limited interest in the insurable property is entitled to recover the full face value of a policy. *Id.*; *see also Gravning v. American Druggists' Ins. Co.*, 259 Ark. 523, 534 Ark. 754 (1976).

While our case law is clear in the above-enumerated respects, a case involving one insured obtaining multiple coverage on a single insurable interest has not previously been decided by our court. A federal court in this state has considered such an issue in *Underwriters at Lloyd's, London v. Pike*, 812 F. Supp. 146 (W.D. Ark. 1993). In *Pike*, the insured obtained insurance coverage for two poultry houses and their contents in the amount of $60,000 from Farmers Mutual Insurance Company. One year later, the insured obtained a second policy for the same property in the amount of $102,000 from Lloyd's of London. A month after the insured obtained the second policy, the covered property was totally destroyed by a fire. Each policy contained an escape clause avoiding liability for a loss if there was other insurance covering the poultry houses. The Eighth Circuit Court of Appeals determined that the escape clauses were mutually repugnant and remanded the matter to the district court, ordering it to prorate the loss between the two policies. The district court then determined the amount to be prorated was to be "no less than the greater of the face amounts of the two insurance policies in effect at the time of the loss." *Id.* at 151.

Appellant now urges this court to adopt the reasoning of the court in *Pike*, wherein the district court distinguished state court cases interpreting the valued-policy statute:

> In spite of what those cases say, the court notes from a careful reading of them that they are not on point because none of them involve the insuring with more than one policy one insurable interest by one insured. Instead, in each of those cases, the property owner or one of several property owners, had insured his or her insurable interest in the property and had obtained an insurance policy to cover that interest, and then another individual or entity with a separate insurable interest had also obtained a policy of insurance insuring that different interest. In spite of the all-inclusive language of those cases, this court doubts that the Arkansas Supreme Court, when squarely faced with this issue, would allow what is clearly and blatantly a double recovery of the loss of one insurable interest. To do so would be to allow something akin to a lottery or wager. One property owner with one insurable interest

could obtain multiple policies insuring the property at its full value and then wait for (and perhaps hope for) a fire, with all of the attendant temptation to "help the odds."

*Id.* at 150.

The district court specifically distinguished the cases of *Mann v. Charter Oak Fire Ins. Co.*, 196 F. Supp. 604 (E.D. Ark. 1961), *aff'd* 304 F.2d 166 (8th Cir. 1962), and *Hensley v. Farm Bur. Mut. Ins. Co.*, 243 Ark. 408, 420 S.W.2d 76 (1967). In *Mann*, the plaintiff homeowners insured their home for $15,000 and First Federal Savings and Loan, as mortgagee, obtained coverage of $8,000, the principal amount of the loan, from Charter Oak Insurance Company. When the plaintiffs' house was destroyed by fire, they recovered the $15,000 in proceeds from their insurance policy, paid off their debt to First Federal, and then sued to recover the $8,000 policy amount from Charter Oak. In allowing the plaintiffs to recover under both policies, this court stated that Arkansas's valued-policy statute was applicable, and the measure of the loss was the aggregate of the concurrent policies in force, with each insurer being liable for the full amount of its policy.

Similarly, in *Hensley*, 243 Ark. 408, 420 S.W.2d 76, two different insurance policies covered the same insurable risk, a rent house. The owners of the home insured it with Farm Bureau Mutual Insurance Company in the amount of $2,000. They subsequently entered into a sales contract with a third party, agreeing to sell the house to him for $2,000. Thereafter, the buyer, without the knowledge of the sellers, obtained insurance on the home in the amount of $2,000 from Glen Falls Insurance Company. The house was then completely destroyed by fire. Glen Falls paid the $2,000 face amount of the policy to the buyer, who, in turn, paid the balance due on the sales contract to the sellers. The sellers then attempted to recover under their insurance policy with Farm Bureau, who denied payment on the basis that the property was covered by other insurance. This court held that Farm Bureau was required to pay the face value of its policy under Arkansas's valued-policy statute. In reaching this conclusion, this court relied on the decision in *Mann*, noting that each insured had a separate insurable interest for the full amount of each policy.

The court in *Pike*, 812 F. Supp. 146, found *Mann* and *Hensley* to be distinguishable because neither case involved one insured insuring one insurable interest with multiple policies. While this may be true, such a distinction fails to recognize that in each of

those cases, as well as in the instant matter, there was a single piece of property insured by multiple policies. Under the valued-policy statute, it is irrelevant who applies for the coverage or who recovers under the policy in the event of a total loss. Any objections to the valued-policy statute should be taken up by the General Assembly, and not by the courts. Appellant's attempt to go behind its policy and limit Appellee's recovery to a pro-rata portion of that policy is in direct conflict with our valued-policy statute. Accordingly, we affirm the trial court's order granting Appellee's motion for summary judgment.

GLAZE, J., concurs.

TOM GLAZE, Justice, concurring. St. Paul Reinsurance Co., Inc. argues the federal district court decision of *Underwriters at Loyds, London v. Pike*, 812 F. Supp. 146 (W.D. Ark. 1993), presents a situation identical to the one now before us, and our court should follow it. Here, as was the case in *Pike*, the insurer argues that the insured obtained two separate valued policies on the same property, and because the insurable interest is the same in both policies, the insured is able to receive a double recovery or "windfall," which exceeds the total value of the insurable interest. St. Paul urges there is an inherent risk in overinsuring property, and further suggests that such added risk and possible double recovery can be removed if the insured's recovery in these circumstances is limited to receiving a pro rata amount from each insurer. *Cf. Underwriters at Lloyd's, London v. Pike*, 977 F.2d 1278 (8th Cir. 1992). The insured, Cheryl Irons, on the other hand, counters that she is in no way enriched by the receipt of monies to which she is entitled, and in paying premiums for the two valued policies, insurers St. Paul and Gold Star were being paid for the risk they underwrote.

There is no dispute in the instant case that the premiums being paid by the insured, Cheryl Irons, for the two fire insurance policies in issue were based on the policies' valued amounts, $105,000 (St. Paul) and $80,000 (Gold Star). There is no issue or question raised concerning the value of Irons's property;[1] nor is there any suggestion that fraud played a part in Irons's loss or claim. At this point, it also seems fair to say that valued policies, such as the ones held by Irons, are issued primarily to avoid potential disputes regarding the value of covered losses. Because Arkansas' valued-policy statute

---

[1] The record reflects an appraisal letter indicating the total loss amounted to $92,983.29.

authorizes a liquidated demand against the insurer *who takes the risk for the full amount stated in the policy*, I agree with the majority opinion that the statute requires full payment under both St. Paul's and Gold Star's policies. *See* 12 Lee R. Russ, *Couch on Insurance* § 175:106 (3d ed. 1995) ("[u]nder a 'valued-policy law' which is meant to fix the measure of damages in case of loss, the aggregate amount of insurance written is conclusive as to the value of the property and if there are multiple insurers, each is liable to the full amount of the policy").

If an insurer is concerned that an insured's recovery under two or more policies could lead to abuses where double recovery might result, nothing precludes an insurer from asking the applicant seeking fire insurance whether the insured has (or intends to obtain) other insurance coverage on the same insurable risk. *Cf. Pike*, 977 F.2d at 1279. Moreover, when such insurance is renewed, it is a simple matter to again inquire of the insured if he or she has obtained (or intends to obtain) other insurance. Obviously, if the insured answers yes, the insurer can then decide if it still wishes to underwrite the insured's property risk. If an insured answers no, but later is shown to have acquired a second policy, the insurer can deny coverage and payment because of the insured's misrepresentation.

In short, I fail to see the potential abuses foreseen by the federal district court in *Pike* and now forecast by the insurer St. Paul. As far as the interplay between the valued-policy law and a pro rata clause in a fire policy, the stated valuation in the policy controls in the absence of a showing of fraud, misrepresentation, collusion, mistake or criminal conduct on the insured's part. *See Tedford v. Security State Farm Ins. Co.*, 224 Ark. 1047, 278 S.W.2d 89 (1955); *see also* 12 Lee R. Russ, *Couch on Insurance* § 175:106 (3d ed. 1995) ("an exception to the valued-policy law applies, and the insurers are entitled to prorate payment under the policies' 'other insurance' clauses, where the policies have been purchased from separate companies and the existence of such purchase was not disclosed to the insurers issuing such policies"). In any event, the remedy St. Paul now seeks from this court is clearly not one that may be extended and can only be authorized by the General Assembly. *Id.* at 1050-1051.